**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| JOSEPH FARAH, JEROME CORSI, WORLDNETDAILY.COM, and WND BOOKS, | ) ) ) ) ) | |
| Plaintiffs, | ) | Civil Action No. 1:11-cv-001179 (RMC) |
| vs. | ) ) ) | |
| ESQUIRE MAGAZINE, INC., HEARST COMMUNICATIONS, INC. and MARK WARREN, | ) ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS HEARST COMMUNICATIONS, INC.'S AND MARK WARREN'S
REPLY BRIEF IN SUPPORT OF SPECIAL MOTION TO DISMISS AND MOTION TO
DISMISS THE PLAINTIFFS' COMPLAINT**

Laura R. Handman (D.C. Bar No. 444386)
John Rory Eastburg (D.C. Bar No. 984434)
Davis Wright Tremaine LLP
1919 Pennsylvania Avenue N.W., Suite 800
Washington, D.C.  20006-3401
(202) 973-4200
(202) 973-4499 (fax)
laurahandman@dwt.com
roryeastburg@dwt.com

Jonathan R. Donnellan (pro hac vice)
Kristina E. Findikyan (pro hac vice)
Hearst Corporation
Office of General Counsel
300 W. 57th Street, 40th Floor
New York, NY 10019
(212) 649-2020
(212) 649-2035 (fax)
jdonnellan@hearst.com
kfindikyan@hearst.com

*Attorneys for Defendants Hearst Communications,
Inc. and Mark Warren*

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ................................................................................ iii

INTRODUCTION ............................................................................................... 1

I.   THE D.C. ANTI-SLAPP ACT CLEARLY APPLIES ................................. 3

    A.   Plaintiffs Cannot Counter the Legal Fact That the Act Confers a Substantive
        Immunity Routinely Enforced By Federal Courts .................................... 3

    B.   Esquire Met Its Initial Anti-SLAPP Burden and Plaintiffs' Efforts to Paint
        Esquire's Challenged Publications as "Commercial" and Not Relating to
        an Issue of Public Interest Are Preposterous ........................................... 6

II.  PLAINTIFFS' FAILURE TO MEET THEIR ANTI-SLAPP BURDEN
    REQUIRES DISMISSAL ............................................................................ 8

    A.   Plaintiffs' Failure to Offer Any Evidentiary Support for their Claims
        Establishes That They Are Not Likely to Succeed On The Merits ............ 8

    B.   Under Any Standard, Plaintiffs Failed to Establish They Are Likely to Succeed
        as a Matter of Law ................................................................................... 9

        1.   Plaintiffs Have Not Established That Any of the Challenged Speech is
            Actionable Defamation, Failing to Address the Vast Body of Case Law
            on Satire and Opinion ........................................................................ 10

        2.   Plaintiffs' False Light Claim is Duplicative of Their Defamation Claim
            and Should Be Dismissed .................................................................. 15

        3.   Plaintiffs Have Not Established They Will Likely Succeed on Their
            Tortious Interference Claim ............................................................... 16

III. PLAINTIFFS' BRIEF UNDERSCORES THE IMPLAUSIBILITY OF THEIR
    CLAIMS, WARRANTING DISMISSAL UNDER FED. R. CIV. P. 12(b)(6) .......... 18

    A.   Plaintiffs Elect Not To Address the Majority of Esquire's 12(b)(6) Motion
        For Good Reason:  Their Threadbare Claims are Implausible On Their Face ...... 18

    B.   Plaintiffs' Lanham Act Claims Rely on Unsupported Conclusions that
        Esquire's Challenged Speech is "Commercial" and Not Editorial in Nature ........ 20

IV.  PLAINTIFFS' CONCLUSORY STATEMENTS ARE INSUFFICIENT TO
    DENY ESQUIRE'S MOTION TO STAY DISCOVERY AND RULE 26
    DISCLOSURES ............................................................................................ 21

CONCLUSION ................................................................................................... 22

# TABLE OF AUTHORITIES

<u>**CASES**</u>                                                                                                 **Page**

*Aldrin v. Topps Company, Inc.*,
   2011 WL 4500013 (C.D. Cal. Sept. 27, 2011) ............................................................. 3

*Alexander v. A & E Television Networks, LLC*,
   2011 WL 3915981 (E.D. Cal. Sept. 6, 2011) ............................................................. 3-4, 7

*Arthur v. Offit*,
   2010 WL 883745 (E.D. Va. Mar. 10, 2010) .................................................................. 14

\* *Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) ................................................................................................... 19

*Banco Cont'l v. Curtiss Nat'l Bank of Miami Springs*,
   406 F.2d 510 (5th Cir. 1969) ......................................................................................... 18

*Bekele v. Ford*,
   2011 WL 4344189 (N.D. Cal. Sept. 15, 2011) ............................................................. 3

\* *Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ....................................................................................................... 19

*Blumenthal v. Drudge*,
   2001 WL 587860 (D.D.C. Feb. 13, 2001) ................................................................... 5

*Bolger v. Youngs Drug Prods. Corp.*,
   463 U.S. 60 (1983) ......................................................................................................... 21

*Browning v. Clinton*,
   292 F.3d 235 (D.C. Cir. 2002) ...................................................................................... 16, 17

*Central Hudson Gas & Elec. Corp. v. Public Service Comm'n*,
   447 U.S. 557 (1980) ....................................................................................................... 21

*Chapman v. Journal Concepts, Inc.*,
   2008 WL 5381353 (D. Haw. Dec. 24, 2008) ............................................................... 13

*Coles v. Washington Free Weekly, Inc.*,
   881 F. Supp. 26 (D.D.C. 1995) ..................................................................................... 19

*Conley v. Gibson*,
   355 U.S. 41 (1957) ......................................................................................................... 18

*Doe v. Gangland Prods., Inc.*,
  2011 WL 3557214 (C.D. Cal. Aug. 1, 2011) .......................................... 7

*Drawsand v. F.F. Properties, L.L.P.*,
  2011 WL 4727306 (N.D. Cal. Sept. 30, 2011) ...................................... 3

*Equilon Enters. v. Consumer Cause, Inc.*,
  29 Cal.4th 53 (Cal. 2002) ............................................................... 5

*First Health Grp. Corp. v. BCE Emergis Corp.*,
  269 F.3d 800 (7th Cir. 2001) ........................................................... 21

*Gardner v. Martino*,
  563 F.3d 981 (9th Cir. 2009) ........................................................... 14

*Godin v. Schencks*,
  629 F.3d 79 (1st Cir. 2010) ............................................................. 3, 4

*Greenberg v. Hunt and Henriques*,
  2011 WL 4639833 (C.D. Cal. Oct. 6, 2011) ........................................ 3

*Henry v. Lake Charles Am. Press, L.L.C.*,
  566 F.3d 164 (5th Cir. 2009) .......................................................... 3, 4

\* *Klayman v. Segal*,
  783 A.2d 607 (D.C. 2001) ............................................................... 15

\* *Lane v. Random House, Inc.*,
  985 F. Supp. 141 (D.D.C. 1995) ..................................................... 15

*Lauderback v. Am. Broad. Cos., Inc.*,
  741 F.2d 193 (8th Cir. 1984) ........................................................... 14

*McFadden v. Deutsche Bank Nat. Trust Co.*,
  2011 WL 4765845 (E.D. Cal. Oct. 7, 2011) ....................................... 3

\* *Moldea v. New York Times Co.*,
  22 F.3d 310 (D.C. Cir. 1994) ........................................................... 15

*Molina-Aviles v. Dist. of Columbia*,
  2011 WL 2783853 (D.D.C. June 23, 2011) ........................................ 18-19

*Myers v. Plan Takoma, Inc.*,
  472 A.2d 44 (D.C. 1983) ................................................................. 19

*Navellier v. Sletten,*
    106 Cal.App.4th 763 (2003) .................................................... 9

\* *New Times, Inc. v. Isaacks,*
    146 S.W.3d 144 (Tex. 2004).................................................... 11

*PAM Media, Inc. v. Am. Research Corp.,*
    889 F. Supp. 1403 (D. Colo. 1995)........................................ 20

*Riley v. Harr,*
    292 F.3d 282 (1st Cir. 2002) .................................................. 14

*Robinson v. Radio One, Inc.,*
    695 F. Supp. 2d 425 (N.D. Tex. 2010).................................... 13

*Saint Consulting Group, Inc. v. Litz,*
    2010 WL 2836792 (D. Mass. July 19, 2010)........................... 3

\* *San Francisco Bay Guardian v. Superior Court,*
    21 Cal. Rptr. 2d 464 (Cal. Ct. App. 1993))............................. 11

*Schnare v. Ziessow,*
    104 F. App'x 847 (4th Cir. 2004) .......................................... 14

*Sherrod v. Breitbart et al.,*
    No. 1:11-cv-00477-RJL (D.D.C. July 28, 2011) ...................... 4

*Snyder v. Creative Loafing, Inc., et al.,*
    2011-CA-003168-B (D.C. Super. Ct.) ..................................... 4

*South Middlesex Opportunity Council, Inc. v. Town of Framingham,*
    2008 WL 4595369 (D. Mass. Sept. 30, 2008) ......................... 3

*Taus v. Loftus,*
    40 Cal.4th 683 (2007) ............................................................ 9

*Turkowitz v. Town of Provincetown,*
    2010 WL 5583119 (D. Mass. Dec. 1, 2010) ........................... 3

*TYR Sport Inc. v. Warnaco Swimwear Inc.,*
    679 F. Supp. 2d 1120 (C.D. Cal. 2009) .................................. 8

*Unelko Corp. v. Rooney,*
    912 F.2d 1049 (9th Cir. 1990)................................................. 13

*United States v. United Foods, Inc.*,
     533 U.S. 405 (2001) ............................................................................. 20

*United States ex rel. Newsham v. Lockheed Missiles & Space Co.*,
     190 F.3d 963 (9th Cir. 1999) ............................................................... 3, 4

*Washington Post Co. v. Keogh*,
     365 F.2d 965 (D.C. Cir. 1966) ............................................................. 19

*Weiland Sliding Doors and Windows, Inc. v. Panda Windows and Doors, LLC*,
     2011 WL 3812695 (S.D. Cal. Aug. 29, 2011) ...................................... 8

*Westfall v. City of Crescent City*,
     2011 WL 4024663 (N.D. Cal. Sept. 9, 2011) ....................................... 3

*World Wrestling Fed'n Entm't, Inc. v. Bozell*,
     142 F. Supp. 2d 514 (S.D.N.Y. 2001) ................................................... 17

## RULES

Fed. R. Civ. P.
     8(a) ....................................................................................................... 19
     12(b)(6) ................................................................................................ passim
     26 .......................................................................................................... 9, 21

## STATUTES

D.C. Code § 16-5501 *et seq.*
     § 16-5501(1)(A) .................................................................................. 6
     § 16-5501(3) ........................................................................................ 6, 7
     § 16-5502(a) ........................................................................................ 6
     § 16-5502(b) ........................................................................................ 6, 8

15 U.S.C. § 1125(a)(1)(A)-(B) .................................................................. 20

## OTHER AUTHORITIES

Report of the D.C. Committee on Public Safety and the Judiciary,
     Nov. 19, 2010, available at
     http://www.dccouncil.washington.dc.us/images/00001/20110120184936.pdf ........... 4, 5

**INTRODUCTION**

Plaintiffs' Opposition to Esquire's Special Motion to Dismiss, Motion to Dismiss and Motion to Stay Discovery is remarkable in two respects.  It makes incredible assertions in an effort to position the case as a commercial dispute to which the anti-SLAPP statute does not apply, and leaves the core of Esquire's arguments on the merits unanswered.  Plaintiffs' strategy underscores the frivolous nature of their claims and the need for dismissal.

Plaintiffs' effort to avoid application of the anti-SLAPP statute and the protections afforded noncommercial speech is unavailing.  Plaintiffs would have this Court believe that their claims, which specifically target speech critical of their extreme views about the President, are "commercial" in nature.  They also claim without basis that they are commercial "competitors" of Esquire.  And they argue that the satirical posting on Esquire's Politics Blog was "commercial speech" about Plaintiffs' business.  None of these things is true, as the challenged publications make abundantly clear on their face.  Plaintiffs cannot magically transform core political speech into "commercial speech" in an effort to avoid the protections of the D.C. Anti-SLAPP Act.

Plaintiffs fare worse on the merits.  In their attempt to convince this Court that a reasonable reader would not view the Blog Post as satire, Plaintiffs make admissions that prove exactly the opposite.  They concede (as they must) that the Court must consider the challenged speech in context but have no response to the numerous satiric clues contained in the Blog Post – including an explicit label of "Humor" on a site dedicated to "opinion" – or to Esquire's long satiric tradition.  Even more telling, Plaintiffs admit that it is plausible, in light of the President's release of his long-form birth certificate, that a

publisher who credits that evidence (as Plaintiffs admit a majority of Americans do) would have pulled the Book, yet they insist that ***they never*** would have done so, not at the time the Blog Post was published, and not now.  But that is precisely what makes the Blog Post satire: no reasonable reader would believe the Blog Post was describing actual facts about Plaintiffs pulling their own Book, regardless of what another publisher might do.  This comes from Plaintiffs, one of whom took to the airwaves immediately following the Blog Post's publication to laughingly say he "assume[d] it was a parody," and mock those who called him for comment, saying, "are you guys serious? . . . You think I'm gonna pull a best-selling book off the shelves? (laughing)."  No reasonable reader acquainted with both Plaintiffs and Esquire, who read the challenged Blog Post in its entirety and in context, could conclude that it was anything but satire.

   Plaintiffs chose not to address myriad other arguments raised by Esquire and even abandoned their misappropriation claim, tacitly conceding its lack of merit.  They submitted no evidence to oppose Esquire's anti-SLAPP motion, which independently requires immediate dismissal of the Complaint.  And they chose not to address any part of Esquire's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) other than the Lanham Act claim, which has no application to this case.  The reason for Plaintiffs' silence is obvious: they did not respond because they could not.

   Plaintiffs' misguided Opposition makes clear their inability to establish that they are likely to prevail in this classic SLAPP case aimed at the exercise of free speech and that, in any event, their claims fail to state a claim as a matter of law.  This Court should grant either or both Esquire's Special Motion to Dismiss and its Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6).

## I.    THE D.C. ANTI-SLAPP ACT CLEARLY APPLIES

### A.    Plaintiffs Cannot Counter the Legal Fact That the Act Confers a Substantive Immunity Routinely Enforced By Federal Courts

Relying on overruled case law, Plaintiffs' Opposition misleads the Court with its erroneous assertion that anti-SLAPP motions are "rarely granted" (Opp. at 1), when in fact the opposite is true.[1]  Plaintiffs' unsupported argument that the Act does not apply in this case fails for four independent reasons.

First, Plaintiffs fail to acknowledge or address the myriad cases cited in Esquire's Moving Brief establishing that federal courts routinely apply state anti-SLAPP statutes in diversity proceedings, "conclud[ing] that they must."  *See* Moving Brief at pp. 18-20 (citing, among others, *Godin v. Schencks*, 629 F.3d 79, 81 (1st Cir. 2010); *Henry v. Lake Charles Am. Press, L.L.C.,* 566 F.3d 164, 168-69 (5th Cir. 2009); *United States ex rel. Newsham v. Lockheed Missiles & Space Co*., 190 F.3d 963, 972 (9th Cir. 1999)). The three unpublished cases relied on by Plaintiffs, *Turkowitz v. Town of Provincetown*, 2010 WL 5583119 (D. Mass. Dec. 1, 2010), *Saint Consulting Group, Inc. v. Litz*, 2010 WL 2836792 (D. Mass. July 19, 2010), and *South Middlesex Opportunity Council, Inc. v. Town of Framingham*, 2008 WL 4595369 (D. Mass. Sept. 30, 2008), were effectively overturned by the First Circuit decision in *Godin v. Schencks*, 629 F.3d 79 (1st Cir. 2010), as noted in Esquire's Moving Brief.  *See id*. at p. 20, n.15.

---

[1] Federal district courts sitting in diversity have granted dozens of anti-SLAPP motions this year alone.  By way of illustration, more than half a dozen SLAPP motions have been granted by California federal courts since Esquire's Moving Brief was filed on August 26.  *See McFadden v. Deutsche Bank Nat. Trust Co.*, 2011 WL 4765845 (E.D. Cal. Oct. 7, 2011); *Greenberg v. Hunt and Henriques*, 2011 WL 4639833 (C.D. Cal. Oct. 6, 2011); *Drawsand v. F.F. Properties, L.L.P.*, 2011 WL 4727306 (N.D. Cal. Sept. 30, 2011); *Aldrin v. Topps Company, Inc.*, 2011 WL 4500013 (C.D. Cal. Sept. 27, 2011); *Bekele v. Ford*, 2011 WL 4344189 (N.D. Cal. Sept. 15, 2011); *Westfall v. City of Crescent City*, 2011 WL 4024663 (N.D. Cal. Sept. 9, 2011); *Alexander v. A & E Television Networks,*

Second, Plaintiffs ignore the Act's history making clear that the District of Columbia Council intended to create *substantive* rights and a *substantive* immunity from suit. *See* Report of the D.C. Committee on Public Safety and the Judiciary (Nov. 19, 2010) ("Committee Report") at 1, 4. There is no support for Plaintiffs' proposition that "the majority of courts . . . hold anti-SLAPP statutes to be procedural in nature and therefore, not applicable in federal court proceedings. (Opp. at 8) Plaintiffs' glib distinction disregards the legislative history and is no more persuasive than claiming that due process is not substantive because it is safeguarded through procedure. Significantly, those courts that have faced the issue have decided that anti-SLAPP statutes do confer a substantive immunity and do not present a conflict with the Federal Rules of Civil Procedure and so should be enforced. *See, e.g.*, *Godin*, 629 F.3d at 86-91; *Newsham*, 190 F.3d at 972; *Henry*, 566 F.3d at 169-70.

Third, Plaintiff's description of two anti-SLAPP cases in the District of Columbia is outdated and wrong. Washington Redskins owner Dan Snyder voluntarily withdrew his defamation lawsuit against the City Paper and so there is no anti-SLAPP motion pending in that now-resolved case. *See Snyder v. Creative Loafing, Inc.*, *et al.*, 2011-CA-003168-B (D.C. Super. Ct.). And in *Sherrod v. Breitbart, et al.*, No. 1:11-cv-00477-RJL (D.D.C. July 28, 2011), Judge Leon did deny defendants' 12(b) motion, alternative motion to transfer, and Special Motion to Dismiss (as Esquire pointed out in its Moving Brief at 20 n.16), but he did so without comment. So there is no basis to determine whether he did so because the special motion to dismiss was untimely, because Plaintiff showed the requisite likelihood of prevailing on the claims, or otherwise. The defendants

---

*LLC*, 2011 WL 3915981 (E.D. Cal. Sept. 6, 2011).

in that case have appealed the denial of their anti-SLAPP motion to the U.S. Court of Appeals for the D.C. Circuit.

Plaintiffs revert to the argument that the Act should not apply because their motive or intent "is not to bring a meritless claim but to vindicate their legal rights . . ." and that there is no "chilling effect" on Esquire.  (Opp. Br. at 7; *see also id.* at 6) However, Plaintiffs' intent or motive is not at all germane to the anti-SLAPP inquiry. First, there is no such legislative language or requirement under the Act.  Moreover, in interpreting the California anti-SLAPP statute, [2] the California Supreme Court has ruled that a plaintiff's intent is not relevant.  All the moving defendant need do is establish "that the challenged lawsuit arose from an act on the part of the defendant in furtherance of her right of petition or free speech."  *Equilon Enters. v. Consumer Cause, Inc.*, 29 Cal.4th 53, 61 (Cal. 2002). [3]  Because Esquire made a prima facie showing that Plaintiffs' claims arise from Esquire's acts "in furtherance of the right of advocacy on issues of public interest," the Act applies.

---

[2] The D.C. Anti-SLAPP Act "follows the model set forth in a number of other jurisdictions."  *See* Committee Report at 1; *id.* at 4 (the Act "follow[s] the lead of other jurisdictions, which have similarly extended absolute or qualified immunity to individuals engaging in protected actions").

[3] Plaintiffs rely on *Blumenthal v. Drudge*, 2001 WL 587860 (D.D.C. Feb. 13, 2001) (Friedman, J.), which applies California law.  But *Blumenthal* did not suggest that a "chilling effect" or an improper purpose was required for the application of the Anti-SLAPP statute.  It simply noted, after denying the SLAPP motion as untimely, that the case did not "appear to be the type of action that the California legislature had in mind when it enacted the Anti-SLAPP law."  Indeed, the California Supreme Court unequivocally repudiated the idea that the SLAPP statute requires a "chilling effect" or an improper purpose.  *See, e.g.*, *Equilon*, 29 Cal.4th at 60 ("judicial imposition of an intent-to-chill proof requirement would undermine the Legislature's expressed aim that public participation 'not be chilled' by SLAPP's") (citation omitted).

**B. Esquire Met Its Initial Anti-SLAPP Burden and Plaintiffs' Efforts to Paint Esquire's Challenged Publications as "Commercial" and Not Relating to an Issue of Public Interest Are Preposterous**

As set forth in Esquire's moving brief, the Act broadly applies to "an act in furtherance of the right of advocacy on issues of public interest." D.C. Code § 16-5502(a). Plaintiffs have no direct response to Esquire's showing that the challenged speech fits within this definition, because the Blog Post and related statements were "[i]n connection with an issue under consideration or review by an . . . executive, or judicial body" and also because they involved community well-being and public figures, which by definition under the Act are "issue[s] of public interest." (Moving Br. at 16-18; D.C. Code §§ 16-5501(1)(A); 16-5501(3)) In fact, Plaintiffs only bolster their own public figure status, trumpeting throughout their brief that they are "world-renowned authors and publishers" whose "position in the community" is the "'go-to' source for information regarding the President's qualifications and the release of a potentially fraudulent birth certificate," a position they claim is supported by 25% of Americans. (Opp. at 1, 3, 10, 22; Compl. ¶¶ 8, 10) [4] Esquire clearly met its initial burden of making a prima facie showing that Plaintiffs' claims arise from an act in furtherance of the right of advocacy on issues of public interest. D.C. Code § 16-5502(b).

Plaintiffs' only arguments on this point invite the Court to disregard the language of the Blog Post and context in which it was published, and the line between commercial and non-commercial speech. First is their incredible contention that Esquire's speech was not about the Birther controversy surrounding the President's qualifications to hold

---

[4] Plaintiffs concede they are limited purpose public figures for purposes of the Birther Controversy ("specifically the validity of President Obama's birth certificate and his eligibility to hold the presidential office") (Opp. at 12-13), which, contrary to their argument, is precisely the subject of the challenged speech at issue in this case.

office or about Corsi's Book, but rather was about "the business aspect of" Corsi's Book,

which, Plaintiffs argue, was not a "public concern." (Opp. at 4) This argument

conveniently ignores the fact that the Blog Post on its face discussed the release of

President Obama's "long-form" birth certificate and the very public and longstanding

controversy between the leaders of the Birther movement and President Obama.

(Declaration of Kristina E. Findikyan, Ex. 27). These were not "fact[s] lurking in the

background" (Opp. at 4), but the express premise for all the challenged statements.[5]

Also unpersuasive is Plaintiffs' attempt to paint this as a "commercial" dispute

outside of the Act's protection. (Opp. at 5)[6] Plaintiffs start with the implausible

---

[5] *Doe v. Gangland Prods., Inc.*, 2011 WL 3557214 (C.D. Cal. Aug. 1, 2011), cited by
Plaintiffs, is wholly inapposite. There the court determined that the California anti-
SLAPP statute did not apply to a breach of promise lawsuit after a television show
allegedly breached an agreement not to disclose the plaintiff source's identity. Contrary
to this case, the plaintiff in *Gangland* took no issue with the program (the speech) and the
court therefore found that the plaintiff's claims were not based on the defendant's
protected free speech activity. *See id.* at \*\* 4-6. *Gangland* has no bearing here, where
Plaintiffs' causes of action arise entirely out the Blog Post, Update and Warren
Statement. More relevant is a decision issued the next month by another federal court,
dismissing a defamation claim stemming from the same television series under the
SLAPP statute. *Alexander v. A & E Television Networks, LLC*, 2011 WL 3915981 (E.D.
Cal. Sept. 6, 2011). The court ruled that "broadcast of the Gangland episode constitutes
an activity conducted in furtherance of Defendant's exercise of its right to free speech,
since the creation of a television show is an exercise of free speech." *Id.* at \*4
(quotations omitted). The broadcast "also was in connection with an issue of public
interest, since the episode concerned the topic of gang-related criminal activity, which,
like child molestation and domestic violence, is significant and of public interest." *Id.*
(quotations omitted).

[6] D.C. Code § 16-5501(3) defines "issue of public interest" as "an issue related to health
or safety; environmental, economic, or community well-being; the District government; a
public figure; or a good, product, or service in the market place. The term 'issue of
public interest' shall not be construed to include private interests, such as statements
directed primarily toward protecting the speaker's commercial interests rather than
toward commenting on or sharing information about a matter of public significance." For
all of the reasons set forth herein, the challenged speech was not "directed primarily
toward protecting the speaker's commercial interests," and was instead the epitome of
"commenting on . . . a matter of public significance."

contention that Esquire is a commercial "competitor" of WorldNetDaily.com and WND

Books. (Opp. at 1, 2)  They go so far as to claim that Mr. Warren, an individual defendant

in this action, is "a direct competitor of Plaintiffs." (Opp. at 21)  The notion is simply not

plausible on its face.  There is no allegation, much less evidence, to support Plaintiffs'

fantastic, self-serving conclusions, which are clearly crafted in an effort to avoid

application of the anti-SLAPP statute and the First Amendment protections afforded non-

commercial speech.  Plaintiffs do not contend (much less advance evidence, which does

not exist) that Esquire has a competing book on the Birther controversy.  The fact that

Esquire and Plaintiffs – along with countless other publications – have  written about the

Birther controversy – from different perspectives for different audiences – does not make

the parties commercial competitors or transform this case into a commercial dispute.  The

only two cases relied on by Plaintiffs, *TYR Sport Inc. v. Warnaco Swimwear Inc.*, 679 F.

Supp. 2d 1120 (C.D. Cal. 2009), and *Weiland Sliding Doors and Windows, Inc. v. Panda

Windows and Doors, LLC*, 2011 WL 3812695 (S.D. Cal. Aug. 29, 2011), were

commercial disputes between entities and representatives associated with competing

consumer products, which is not the case here.  In sum, Plaintiffs' arguments that the

anti-SLAPP statute does not apply are frivolous.

## II.     PLAINTIFFS' FAILURE TO MEET THEIR ANTI-SLAPP BURDEN REQUIRES DISMISSAL

### A.  Plaintiffs' Failure to Offer Any Evidentiary Support for their Claims Establishes That They Are Not Likely To Succeed On The Merits

Under the Act, once the moving party makes its prima facie showing, the court is

*required* to grant the special motion to dismiss unless the responding party meets its

burden of demonstrating that its claims are *likely* to succeed on the merits.  D.C. Code

§ 16-5502(b) (emphasis added).  Other courts interpreting a plaintiff's burden under an

anti-SLAPP statute have made clear that to meet it, it is not sufficient that a plaintiff's complaint survive a demurrer.  *See Navellier v. Sletten*, 106 Cal.App.4th 763, 776 (2003).  On a special motion to dismiss, a plaintiff cannot simply rely on the bare allegations of its own pleading but must "'establish *evidentiary* support for [its] claim.'"  *Id*. at 775-76 (citation omitted; italics in original).  A plaintiff's claims must be "supported by a prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited."  *Taus v. Loftus*, 40 Cal.4th 683, 713-14 (2007) (quotation and citation omitted).

Here, Plaintiffs did not submit any evidence in support of their claims.  There are no affidavits and no evidence.  All that exists are the bare allegations of Plaintiffs' Complaint, which do not even state a claim – much less satisfy Plaintiffs' burden under the Act.  They do not establish that Plaintiffs are likely to succeed on the merits of their causes of action, as required by the Act.  On this basis alone, Esquire's Special Motion to Dismiss should be granted.[7]

### B.   Under Any Standard, Plaintiffs Failed to Establish They Are Likely to Succeed as a Matter of Law

Even if evidence were not necessary to support Plaintiffs' anti-SLAPP burden, Plaintiffs have failed to establish that they are likely to succeed on each of their causes of action.  Plaintiffs' heavy reliance on implausible allegations and unsupported conclusions clearly does not satisfy the Act – it does not even satisfy Rule 12(b)(6).  *See*, *infra*, pp. 18-21.  And unlike Rule 12(b)(6), which affords Plaintiffs every reasonable presumption,

---

[7] In arguing that Esquire's Motion to Stay Discovery and Rule 26 Disclosures should be denied, *Plaintiffs admit that they have failed to meet their anti-SLAPP burden*.  *See* Opp. at 24-25.  As set forth, *infra*, discovery is not necessary to decide the motions at issue, which are all suitable for decision as matters of law.

the Act deliberately shifts the burden to Plaintiffs, requiring them to affirmatively demonstrate the ultimate merit of their claims to survive this motion. Plaintiffs cannot simply fall back on the allegations of the Complaint. Nor can they remain silent. Here, however, Plaintiffs do both. The consequence of their silence on this motion is a concession that they have no claim for misappropriation invasion of privacy. They likewise concede through their silence that Mark Warren's post-publication statement (Corsi is an "execrable piece of shit") is non-actionable hyperbole. Plaintiffs ignore other deficiencies in their claims, exposing their lack of merit. For example, Plaintiffs admit that context is the key inquiry in analyzing their defamation claim, yet fail to address the myriad clues within the Blog Post indicating it was satire, the decades of satirical tradition at Esquire that would signal the reasonable reader that the Blog Post was satire, and the body of case law supporting that same conclusion given the context. Furthermore, Plaintiffs admit that their duplicative false light claim is subject to the same standards as defamation, subjecting both claims to dismissal. Finally, Plaintiffs fail to meet their burden on their tortious interference claim, relying on conjecture and untenable, false conclusions that Esquire is a commercial competitor of Plaintiffs. For these reasons and others explained below, Esquire's Special Motion to Dismiss should be granted.

> 1. *Plaintiffs Have Not Established That Any of the Challenged Speech is Actionable Defamation, Failing to Address the Vast Body of Case Law on Satire and Opinion*

Lacking any response to the extensive body of case law establishing that Esquire's publication is non-actionable satire, Plaintiffs choose to address issues not even raised by Esquire's motions, such as actual malice, negligence, and whether the challenged speech was "of and concerning" them. *Compare* Moving Br. at nn.17-18 *with*

Opp. at 9-14.  The only conclusion to draw from this irrelevant material is that Plaintiffs simply cannot engage on the issues raised by Esquire, and have failed to meet their heavy burden under the Act.

Plaintiffs' only argument relevant to the motion is that the reasonable reader could view the Blog Post as stating "objective facts" about Plaintiffs.  This is so, according to Plaintiffs, because their Complaint alleges that an unspecified number of people believed the Blog Post to be true.  (Opp. at 14-16, citing Compl. at ¶¶ 13, 17)   But "the question is not whether some actual readers were mislead, as they inevitably will be [by satire], but whether the hypothetical reasonable reader could be."  *New Times, Inc. v. Isaacks*, 146 S.W.3d 144, 157 (Tex. 2004); *see also id.* ("The fact that real party furnished declarations of a few people who stated that they did not recognize the letter as a joke does not raise a question of fact as to the view of the average reader.  The question is not one that is to be answered by taking a poll of readers but is to be answered by considering the entire context in which the offending material appears.") (quoting *San Francisco Bay Guardian v. Superior Court*, 21 Cal. Rptr. 2d 464, 467 (Cal. Ct. App. 1993)).

As set forth in Esquire's Moving Brief (at 26-30), the applicable test is whether the reasonable reader, who is of such intelligence and learning as to tell the difference between satire and sincerity, could reasonably understand the Blog Post as describing actual facts.  *See New Times*, 146 S.W.3d at 157-58.   In their Opposition, Plaintiffs concede that this Court must consider the challenged speech in context (Opp. at 15, 17), but ignore both the immediate and broader contexts in which the Blog Post was published.   That context leads to but one conclusion – that a reasonable reader would identify the Blog Post as satire.  For example, Plaintiffs fail to address, because they

can't, the numerous clues to the reasonable reader in the Blog Post indicating that it was not conveying actual facts. *See* Moving Br. at 31-32. Plaintiffs claim that the Blog Post was not labeled "satire," (Opp. at 13) when the evidence establishes exactly the opposite. *See* Findikyan Decl. at Ex. 27 (describing Politics Blog as a place for "opinion" and specifically labeling Blog Post as "Humor"). Tellingly, Plaintiffs choose to ignore the more than fifty years of satirical tradition at Esquire, which Esquire.com continued through its Politics Blog. (Findikyan Decl., Exs. 29-42)

Plaintiffs' admissions concerning the broader context in which the satiric Blog Post was published lead to the same conclusion, also supporting dismissal. Plaintiffs admit that the vast majority of Americans – 75% of them – believe that President Obama's birth certificate is authentic and that he is qualified to serve as President. *See* Opp. at 10, 12, 21 (claiming only 25% of Americans agree with Plaintiffs' position). Plaintiffs also concede that it is plausible that a publisher who agreed with the vast majority of Americans – i.e., who "question[ed] the accuracies of the content" of Plaintiffs' book "when the book still questions the validity of the presidency after the release of the President's birth certificate" – "would discontinue publication" of that book. (Opp. at 15) Yet at the same time, Plaintiffs confirm that they stand apart from that majority view and have never wavered from their steadfast position that President Obama is unqualified and his birth certificate fraudulent, and they "continue to believe in the accuracy of their book and continue to advertise it as such." (Opp. at 10; *see also id.* at 2 ("Plaintiffs continue to remain steadfast in their belief of the books' [sic] propositions") and 11) This dichotomy between what Plaintiffs admit a reasonable publisher in synch with the majority of Americans *would plausibly do* (pull the Book in

light of the birth certificate's release) versus what the Birthers would **never** do is precisely what makes the Blog Post satire. Plaintiffs' unswerving commitment to the Book's content and Birther ideals was widely known at the time of the Blog Post's publication. No reasonable reader would believe the Blog Post was describing actual facts about Plaintiffs.

None of the authorities relied on by Plaintiffs contain the type of exaggerated, clearly counter-factual account like the Blog Post here. In *Unelko Corp. v. Rooney*, 912 F.2d 1049 (9th Cir. 1990), a corporate plaintiff challenged famed "60 Minutes" journalist Andy Rooney's factual statement that plaintiff's product "didn't work." *Id*. at 1051. There was no mischaracterization or exaggeration in the Rooney report that would indicate to a reasonable reader that it was a fake news item. So too in *Robinson v. Radio One, Inc*., 695 F. Supp. 2d 425 (N.D. Tex. 2010), where the court found none of the hallmarks of parody or satire – "mischaracterization or exaggeration" – in a radio show that identified the plaintiff as gay.[8]  Plaintiffs' reliance on these cases is misplaced.

Plaintiffs' arguments against the Update as opinion and fair comment also fall flat.[9]  Plaintiffs now contend that the Update is defamatory because it allegedly accuses them of being "liars" and accuses the Book of not being based "on reality."  Only an excessively literal reading of the Update, without a consideration of the context or its complete language, could lead to such a conclusion, and such an approach would not be a

---

[8] Plaintiffs also cite *Chapman v. Journal Concepts, Inc*., 2008 WL 5381353 (D. Haw. Dec. 24, 2008), however, defendants there did not contend that their magazine publication was satirical.  *See id*. at *12.

[9] Plaintiffs do not dispute that the Warren Statement is classic rhetorical hyperbole, opinion and fair comment.  *Compare* Moving Br. at 35 *with* Opp. at 16-18.

proper application of the District of Columbia's test, which Plaintiffs concede relies on considering the challenged speech in context.

The full Update reads as follows:

> **Update, 12:25 p.m.,** *for those who didn't figure it out yet, and the many on Twitter for whom it took a while*: We committed satire this morning to point out the problems with selling and marketing a book that has had its core premise and reason to exist gutted by the news cycle, several weeks in advance of publication. Are its author and publisher chastened? Well, no. They double down, and accuse the President of the United States of perpetrating a fraud on the world by having released a forged birth certificate. *Not because this claim is in any way based on reality, but to hold their terribly gullible audience captive to their lies, and to sell books.* This is despicable, and deserves only ridicule. That's why we committed satire in the matter of the Corsi book. Hell, even the president has a sense of humor about it all. Some more serious reporting from us on this whole 'birther' phenomenon here, here, and here.

Findikyan Decl., Ex. 27 (emphasis added).

Contrary to Plaintiffs' argument, the hyperbolic statements in the Update that Plaintiffs' claim was not "based on reality" and that Plaintiffs had told "lies" are non-actionable as fully protected opinion and fair comment.[10] Significantly, the Update included the factual predicate (the Plaintiffs' claim that the President of the United States perpetrated a fraud on the world by releasing a forged birth certificate) on which the

---

[10] Indeed, courts across the country have held statements that plaintiffs have lied or are "liars" to be protected opinion. *See, e.g.*, *Gardner v. Martino*, 563 F.3d 981, 988, 992 (9th Cir. 2009) (radio host's statements "they're lying to you," and "Will they admit to us that they . . . they went back on their word?" in context of radio talk show were non-actionable opinion); *Schnare v. Ziessow*, 104 F. App'x 847, 851-52 (4th Cir. 2004) ("A reasonable reader would ... recognize this 'accusation' of lying as just an 'expression of outrage.'"); *Riley v. Harr*, 292 F.3d 282, 292-93 (1st Cir. 2002); *Lauderback v. Am. Broad. Cos., Inc.*, 741 F.2d 193, 196 (8th Cir. 1984) (suggestion that plaintiff "was a crook or liar" was protected opinion); *Arthur v. Offit*, 2010 WL 883745, at *3, *5 (E.D. Va. Mar. 10, 2010) (statement that plaintiff made defendant "particularly nuts . . . because '[s]he lies'" was "an outpouring of exasperation and intellectual outrage" and not a literal assertion of fact).

opinion (this claim is not "based on reality" and are "lies") is based.  Under District of

Columbia law, this Court must analyze the challenged statements in their entirety, and

take into account the immediate and larger social context in which they appear.  Here, the

Update was part of a highly-charged, national debate kept alive by the Birther movement

on an issue of widespread public concern: whether the President is qualified to hold

office.  With that context, and considering the tenor of the Update as a whole, a

reasonable reader would understand the statements in the Update to be opinion and the

writer's interpretation of the facts.  *See, e.g.*, *Moldea v. New York Times Co.*, 22 F.3d

310, 314 (D.C. Cir. 1994) (opinion); *Lane v. Random House, Inc.*, 985 F. Supp. 141, 150

(D.D.C. 1995) (Lamberth, J.) (fair comment).

> 2. *Plaintiffs' False Light Claim is Duplicative of Their Defamation Claim and Should Be Dismissed*

Plaintiffs' Opposition makes dismissal of the false light claim clear.  Plaintiffs

cite no authority for their proposition that the challenged speech was "highly offensive"

to a reasonable person, they do not dispute that their false light claim duplicates their

defamation claim, nor do they dispute (and indeed they agree) that false light claims are

subject to the same constitutional protections as defamation claims.  (Opp. at 19)

Plaintiffs repeat the same arguments as they set forth in connection with their defamation

claim, only highlighting the duplicative nature of their false light invasion of privacy

claim.  Not surprisingly, Plaintiffs do not address *Klayman v. Segal*, 783 A.2d 607, 619

(D.C. 2001), which is directly on point and dispositive of this claim.  *See* Moving Br. at

35-36.  Because the challenged statements are non-actionable opinion, Plaintiffs' false

light claim falls for the same reasons as their defamation claim.

3.      *Plaintiffs Have Not Established They Will Likely Succeed on Their Tortious Interference Claim*

The one thing that is clear from their Opposition is that Plaintiffs have made a radical departure from their tortious interference allegations, shifting away from the theory in their Complaint that the challenged speech somehow interfered with their existing relationships with distributors and booksellers, to an argument in their Opposition that the challenged speech interfered with their expectation that they would sell their Book.  Plaintiffs have failed to establish that they are likely to succeed on their tortious interference claim under either theory.

Two equally important points mandate immediate dismissal of the tortious interference claim.  First, Plaintiffs do not dispute Esquire's argument that the tortious interference claim is an improper attempt to plead around the First Amendment, and therefore it falls for the same reasons as their defamation and false light claims.  *See* Moving Br. at 39.  Second, and quite tellingly, Plaintiffs failed to submit any evidence – not even a single piece – to meet their anti-SLAPP burden on their tortious interference claim.   For example, there is no contract in the record evidencing a business relationship with a bookseller, no affidavit attesting to any expectation of the Book's sale, no evidence of booksellers removing the Book from shelves and no evidence on the proximate cause.  The absence of this type of evidence is dispositive, and requires that Esquire's Special Motion to Dismiss be granted.

Plaintiffs' argument that Esquire's challenged speech was the proximate cause of the alleged lack of interest in the Book lacks even colorable support.  *Browning v. Clinton*, 292 F.3d 235 (D.C. Cir. 2002), relied on by Plaintiffs, is instructive.  In that case, a book author who was an alleged mistress of former President Clinton sued, among

16

others, *The New Yorker* and a journalist, following the publication of an article about her

unpublished book, wherein it was stated that a publisher "'wouldn't touch [the book] with

a ten-foot pole' because it wasn't 'particularly newsworthy' and was 'far below [the

publisher's] standards.'" *Id*. at 241.  The Court dismissed the tortious interference claim

against the publication and journalist, finding "the relationship between the article and

any publisher's failure to buy [the plaintiff's] book is too attenuated" on causation

grounds.  *Id*. at 245.

Plaintiffs' attempt to allege and establish that Esquire had a "strong showing of

intent" to disrupt their ongoing business relationships also fails.  In its Moving Brief,

Esquire cited a litany of cases establishing the proposition that journalism is not the type

of conduct required to state a valid tortious interference claim.  *See* Moving Br. at 40.  In

response, Plaintiffs rely on a single authority, *World Wrestling Fed'n Entm't, Inc. v.

Bozell*, 142 F. Supp. 2d 514 (S.D.N.Y. 2001), which is an inapposite case concerning

commercial speech.

At bottom, it is not supported and not credible to contend that the Blog Post –

which was posted on the Internet for only ninety (90) minutes before the Update

explicitly explained it was satire – proximately caused the parade of horribles claimed in

Plaintiffs' brief, including refund requests, bookstores pulling books from shelves and

lost sales because the public thought the authors had recanted their thesis during that

short time.  There is no plausible factual basis to blame any disappointing sales on

Esquire's Blog Post.  What is entirely more likely, as set forth in the Update, is that

consumers and booksellers realized the entire premise of the Book had been gutted by the

news cycle, i.e., President Obama's release of his long-form birth certificate.  Plaintiffs'

Complaint is a transparent attempt to shift blame away from themselves for what appears to be a book Plaintiffs hoped would sell better but whose thesis is not believed, even they concede, by the vast majority of Americans.  *See* Opp. Br. at 10, 21 (claiming that  25% of Americans agree with Plaintiffs' thesis – and even that low percentage is offered without support).

### III.   PLAINTIFFS' BRIEF UNDERSCORES THE IMPLAUSIBILITY OF THEIR CLAIMS, WARRANTING DISMISSAL UNDER FED. R. CIV. P. 12(b)(6)

#### A.   Plaintiffs Elect Not To Address the Majority of Esquire's 12(b)(6) Motion for Good Reason:  Their Threadbare Claims are Implausible On Their Face

In addition to its anti-SLAPP motion, Esquire independently moved to dismiss Plaintiffs' Complaint on the ground that Plaintiffs failed to properly state a claim under Federal Rule of Civil Procedure 12(b)(6).  Plaintiffs mainly ignore that motion to dismiss. Their only specific argument against it is that they have stated a claim under the Lanham Act.  Plaintiffs respond to the rest of the motion in broad strokes, relying on an outdated, insufficient legal pleading standard long abandoned by the Supreme Court.

Plaintiffs erroneously contend that this Court "must deny Defendant's [sic] motion to dismiss unless it appears to a certainty that Plaintiff would be entitled to no relief under any state of facts which could be proved to support a claim."  (Opp. at 23, citing *Banco Cont'l v. Curtiss Nat'l Bank of Miami Springs*, 406 F.2d 510, 514 (5th Cir. 1969))  That, however, is no longer the law.  As this Court is well aware, the Supreme Court has abandoned the standard of *Conley v. Gibson*, 355 U.S. 41 (1957), and now "'requires more than labels and conclusions,'" admonishing that a "'formulaic recitation of the elements of a cause of action will not do.'"  *Molina-Aviles v. Dist. of Columbia*,

2011 WL 2783853, at *2 (D.D.C. June 23, 2011) (Collyer, J.) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "Rule 8(a) requires an actual showing and not just a blanket assertion of a right to relief."  *Id.* (citing *Twombly*, 550 U.S. at 555 n.3).  "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is 'plausible on its face.'"  *Id.* at *3 (quoting *Twombly*, 550 U.S. at 570).  "[A] court need not accept as true legal conclusions set forth in a complaint;" "'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'"  *Id.* (quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)).

Plaintiffs' Complaint is rife with threadbare and conclusory allegations not "plausible on [their] face."  The entire premise of the Complaint is highly implausible: that large numbers of consumers of Plaintiffs' Book were allegedly misled during the ninety (90) minutes before Esquire's satiric Blog Post was updated to expressly label it (a second time) as satire, causing those consumers to request refunds and cancel Book purchases and leading bookstores to pull the book from their shelves.  The Complaint's subsidiary allegations are equally implausible.  These include the repeated bald assertion that the parties are commercial competitors and that Esquire's editorial content on its Politics Blog was commercial speech.  None of these allegations, which are essential to Plaintiffs' claims and arguments, can survive scrutiny under *Iqbal* and *Twombly*.

In light of threat to the free speech principles at the heart of this case, the summary procedures emphasized by this Circuit are "even more essential."  *Washington Post Co. v. Keogh*, 365 F.2d 965, 968 (D.C. Cir. 1966); *see also Coles v. Washington Free Weekly, Inc.*, 881 F. Supp. 26, 30 (D.D.C. 1995); *Myers v. Plan Takoma, Inc.*, 472 A.2d 44, 50 (D.C. 1983).  They should be applied here to dismiss Plaintiffs' Complaint.

**B.      Plaintiffs' Lanham Act Claims Rely on Unsupported Conclusions that Esquire's Challenged Speech is "Commercial" and Not Editorial in Nature**

The only cause of action Plaintiffs defend as stating a claim under Rule 12(b)(6) is their vague claim under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A)-(B).  However, once again, Plaintiffs fail to address the majority of arguments raised by Esquire establishing they cannot state a claim.

Plaintiffs do not dispute that Lanham Act claims are subject to a heightened pleading standard – a standard that they have not met.  (Moving Br. at 42)  Nor can they state a claim under the very terms of the statute because (a) they do not contend that there was any confusion between Esquire and Plaintiffs, as required by 15 U.S.C. § 1125(a)(1)(A); and (b) the challenged speech was clearly not "commercial advertising and promotion," as required by 15 U.S.C. § 1125(a)(1)(B).

Plaintiffs contend that their Lanham Act claim should proceed because – they argue, without authority – the challenged speech is somehow "commercial."  (Opp. at 24)[11]  Plaintiffs' conclusory assertion is unsupported by any law or factual allegations and merits little response.  The speech they challenge is core, political speech entitled to the full protection of the First Amendment.  It is not commercial speech by any definition.  *See United States v. United Foods, Inc*., 533 U.S. 405, 409 (2001) (defining

---

[11] Without addressing the case law from the First, Second, Third, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits holding that the Lanham Act section at issue only applies to commercial speech (Moving Br. at 43 n.28), Plaintiffs also argue that "many courts" have held that the Lanham Act applies to non-commercial speech.  (Opp. at 24)  However, in the single case on which they rely for their erroneous proposition, *PAM Media, Inc. v. American Research Corp*., 889 F. Supp. 1403 (D. Colo. 1995) (analyzing whether radio show defendants' promotional scheme violated fair marketing), the district court treated the speech at issue as either commercial or mixed speech.

commercial speech as "speech that does no more than propose a commercial transaction"); *see also Central Hudson Gas & Elec. Corp. v. Public Service Comm'n*, 447 U.S. 557, 561 (1980) (defined as "expression related solely to the economic interests of the speaker and its audience"); *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66-67 & n.13 (1983) (finding commercial speech based on three combined factors of advertising format, explicit reference to a product, and economic motivation). Moreover, the Lanham Act's "commercial advertising and promotion" requirement has been interpreted to be even more narrow than the breadth of the commercial speech doctrine. *See First Health Grp. Corp. v. BCE Emergis Corp.*, 269 F.3d 800, 803 (7th Cir. 2001).

The Blog Post was a political critique of Plaintiffs' Book and the Birther devotees' single-minded stance opposing the President's eligibility to hold office, notwithstanding objective contrary evidence that was publicly released and discussed by the President himself. The Update and Warren Statements are pure opinion, fair comment and rhetorical hyperbole. There is no credible argument that the challenged speech is commercial or that Plaintiffs have stated a Lanham Act claim. The entirety of the Complaint should be dismissed.

## IV. PLAINTIFFS' CONCLUSORY STATEMENTS ARE INSUFFICIENT TO DENY ESQUIRE'S MOTION TO STAY DISCOVERY AND RULE 26 DISCLOSURES

Finally, Plaintiffs have little to say in opposition to Esquire's Motion to Stay Discovery and Rule 26 Disclosures. As set forth in Esquire's moving papers, its Special Motion to Dismiss under the Act, and its motion to dismiss pursuant to Rule 12(b)(6) are both directed to matters of law, and no discovery is required to oppose the motions. Doing no more than parrot the language of the anti-SLAPP statute, Plaintiffs state in conclusory fashion that "targeted discovery is necessary for Plaintiffs to establish that

they will likely succeed on the merits of their claims." (Opp. at 24-25) Nowhere do they specify what discovery would be required, or how such discovery would enable Plaintiffs to defeat Esquire's motion. Plaintiffs have made no showing why the Act's automatic stay provision should not be enforced or why this Court should not, pursuant to its inherent powers under the Federal Rules, save Esquire from the undue burdens and significant expense associated with discovery based on a meritless litigation directed at Esquire's exercise of its First Amendment rights.

## CONCLUSION

For all of the reasons set forth above and in Esquire's Moving Brief, Defendants respectfully request that this Court grant the Special Motion and Motion to Dismiss Plaintiffs' Complaint, award Defendants their attorney's fees and costs, and enter judgment against Plaintiffs.

Dated: October 17, 2011

Respectfully Submitted,

DAVIS WRIGHT TREMAINE LLP

_/s/ Laura R. Handman_

By:   Laura R. Handman
      John Rory Eastburg

          -and-

Jonathan R. Donnellan (pro hac vice)
Kristina E. Findikyan (pro hac vice)

*Attorneys for Defendants Hearst Communications, Inc. and Mark Warren*

**CERTIFICATE OF SERVICE**

I hereby certify that, on the date below, I caused the foregoing DEFENDANTS HEARST COMMUNICATIONS, INC.'S AND MARK WARREN'S REPLY BRIEF IN SUPPORT OF SPECIAL MOTION TO DISMISS AND MOTION TO DISMISS THE PLAINTIFFS' COMPLAINT to be served via ECF on the following persons:

Larry E. Klayman
KLAYMAN LAW FIRM
2000 Pennsylvania Avenue, NW
Suite 345
Washington, DC 20006
(310) 595-0800
Fax: (310) 651-3025
Email: leklayman@yahoo.com

Dated: October 17, 2011

/s/ Laura R. Handman